Filed 5/9/23 Rice v. Gulfstream Aerospace CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT RICE, | B316079 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21LBCV00176) |
| v. | |
| GULFSTREAM AEROSPACE CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Gibson Dunn & Crutcher, Scott A. Edelman, Jesse A. Cripps and Monica B. Paladini for Defendant and Appellant.

Peretz & Associates, Yosef Peretz and Shane Howarter for Plaintiff and Respondent.

————————————

Robert Rice was laid off from his employment at Gulfstream Aerospace Corporation (Gulfstream) on May 1, 2020. He sued Gulfstream for wrongful termination, age discrimination, retaliation, violation of wage and hour laws, and various other employment-related claims.

Gulfstream moved to compel arbitration, arguing Rice had agreed to arbitration when he signed an employment application stating applicants were bound by the company's dispute resolution policy. In opposition, Rice disputed that a valid agreement to arbitrate was formed but argued that, even if he had agreed to arbitrate, the agreement was unconscionable.

The court denied the motion, concluding the agreement was unconscionable. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Evidence Regarding Contract Formation*
       1.     *Rice's Employment Application*
Rice was hired by Gulfstream in April 1986 and was laid off in May 2009. In February 2010, he submitted an employment application and was rehired.

In a box above Rice's signature, the employment application stated: "I agree to the exclusive resolution of all claims arising out of or relating to my application for employment, employment or termination of employment by the Company by the procedures set forth in the Company's Dispute Resolution Policy. The claims covered by this agreement shall include, but are not limited to, claims for wages, breach of any express or implied promises, torts, and discrimination on any basis, but shall not include claims for workers compensation,

2

unemployment or claims under any benefit or pension plans or other agreements between the Company and me. I understand that as a result of my and the Company's mutual agreement to resolve claims exclusively through the Company's Dispute Resolution Policy, I and the Company hereby waive any rights to a jury trial."

It is undisputed that the company's dispute resolution policy was not attached to the application and that Rice was not provided with a copy to review at the time he signed the application. Gulfstream's human resources representative declared the policy was available to job applicants "by request."

2. *Conflicting Evidence as to Whether Rice Ever Received a Copy of the Dispute Resolution Policy*

The parties dispute whether Rice ever received a copy of the dispute resolution policy, either before or after Rice signed the application. Gulfstream contends that Rice had received a copy six years earlier, when he had previously been employed by the company, and that he received another copy in March 2010 during the new employee orientation. Rice does not recall ever receiving a copy during his prior employment and denies he received a copy at the new employee orientation.

Gulfstream provided declarations of two human resources representatives, Trevor Clifton and Ronda Londen. Clifton declared Gulfstream implemented its dispute resolution policy in July 2002 with an effective date of August 2002. Gulfstream mailed a copy of the policy to its employees along with a letter informing them they could opt out within 30 days of receiving it. Gulfstream's records show that the policy was mailed to Rice's home in 2002 and that Rice did not opt out.

Clifton further declared Gulfstream amended the policy in March 2003, with an effective date of April 2003. The new policy was mailed to employees, including Rice, in or around April 2003. When Rice submitted his employment application in 2010, the April 2003 policy was still in effect.

Ronda Londen declared she was "involved in New Hire Orientation for more than twenty-five (25) years." She does not state she was involved in the orientation sessions Rice attended. In March 2010, it was Gulfstream's practice to hold a two-day orientation for new employees. Employees received training on company policies, including the dispute resolution policy, which was contained in a new employee orientation binder provided to participants. It was the custom and practice of the human resources facilitator to ask the new employees to read through the dispute resolution policy and then for the facilitator to lead an interactive session regarding the policy.

Londen further declared attendees at the orientation sessions were required to sign an acknowledgment that they had received training on certain topics. Rice signed an acknowledgement that he had received training on nine broadly defined topics on the second day of orientation. One of the topics was "policy review." As to that topic, the acknowledgement states: "POLICY REVIEW [¶] I acknowledge that I attended the Gulfstream training program for *Policy Review* and have been trained on locating up-to-date policies on the Gulfstream Intranet site."

In opposition to the motion, Rice submitted his own declaration in which he stated he did not recall ever receiving the 2002 or 2003 policies, either before or after he was rehired. At the time he was rehired, no Gulfstream representative told him

4

that the 2003 version of the policy would apply to him. He did not receive a copy of the policy at the time of his application or thereafter. He never received any training on the policy or any explanation of it.

Rice further declared he attended the two-day orientation meeting for new employees. Employees were given a high-level overview of company policies and practices, but the dispute resolution policy was not discussed. He was given a new hire orientation binder, but a copy of the dispute resolution policy was not included with the materials. The orientation sessions were not interactive, and the newly hired employees were not encouraged to ask and did not ask questions.

Gulfstream relies on the following language from its 2003 policy in support of its argument that a valid contract was formed: "The submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be an acceptance of the [dispute resolution policy]. No signature shall be required for the Policy to be applicable." This language was contained on page 3 of the 11-page single-spaced document. Other relevant terms are discussed below.

3. *Conflicting Evidence as to Whether Rice Received Notice of an Updated Policy in 2019*

Gulfstream's human resources representative Clifton declared a new version of the policy went into effect in January 2019. He stated employees were notified the policy had been revised through a posting on the company's intranet. Clifton attaches what appears to be an intranet posting dated December 21, 2018 stating, "Gulfstream's Dispute Resolution

5

policy has been updated. You can review all company policies on Inside Gulfstream under the Resources menu."

Rice declared he never saw the purported notification. He was never told he should review the updated policy and never saw it on the intranet. He was never required to sign any acknowledgement that he had seen it and never agreed to the terms. He was away from work for the holidays on December 21, 2018 when the updated policy was purportedly posted on the intranet.

As with the 2003 policy, the 2019 policy stated that continued employment would be deemed acceptance of the policy.

B.      *Key Terms of the Dispute Resolution Policies*
        1.      *2003 Policy*
                a.      *Overview*

The 2003 dispute resolution policy purports to apply to all employees except those covered by a collective bargaining agreement. The policy states it is a "structured dispute resolution process that applies to Covered Claims and consists of four levels:" (1) human resources review; (2) management panel review; (3) mediation; and (4) arbitration.

In Level 1, "Human Resources meets informally with the Employee and the other parties involved and attempts to resolve the Employee's disputes." If the employee is not satisfied with the resolution of the problem after the informal human resources review, the employee has 30 days to submit the claim to the management panel review, or the employee waives all right to pursue his or her covered claims.

In Level 2, the employee must meet with a management panel. If the employee is not satisfied with the result of that

6

step, the employee must, "within 30 days of the date of the Final Determination of the Management Panel Review, submit the Covered Claim to Mediation (Level 3), or the Employee waives all rights to pursue his or her Covered Claims."

In Level 3, the employee must participate in mediation with an outside mediator. If the parties do not reach a resolution, "the Employee must, within 30 days of the date of the Final Determination of the Mediation, submit the claim to Arbitration (Level 4)[,] or the Employee waives all rights to pursue his or her Covered Claims."

Level 4 is arbitration. "The Arbitrator's decision is the exclusive remedy for Covered Claims and is final and binding on the Company and Employee."

"Employees must complete each level of the process before proceeding to the next level." The company, by contrast, "may elect to bypass one or more steps prior to arbitration for disputes with applicants for employment, with former employees, or if the Company is the initiating party."

Employees are required to submit covered claims to the dispute resolution process as set forth in the policy. The policy sets forth the "sole and exclusive forum and remedy for all Covered Claims. [¶] The Employee and Company agree and hereby waive any right to jury trial for any Covered Claim. The Employee further agrees that no Covered Claim may be brought as a class or collective action either under this Policy or in court and that he/she will not act as a class or collective action representative or participate as a member of a class of claimants with respect to any Covered Claim."

7

b. *Covered claims*

The term "Covered Claims" is defined as follows:  "Covered Claims are employment-related claims between an individual Employee and the Company [and related entities], and their respective individual managers and other present or former employees.  Covered Claims involve a claim of a legal right, obligation or entitlement regarding or arising from the employment relationship."

The policy lists eight categories of claims that are included in "Covered Claims."  Six of the categories are claims only an employee would bring against an employer, such as claims involving wrongful termination, employment discrimination and harassment, alleged violations of the Family and Medical Leave Acts, failure to provide workplace accommodations, and wage and hour violations.  Two of the other listed categories are claims that would primarily be brought by employees but could also be brought by employers, including tort claims and claims of violation of public policy.  The final category is for "Claims based on express or implied contracts," which could include claims brought by employers or employees.

The policy lists six categories of claims that are excluded from the policy.  The excluded claims include "Claims involving patents or inventions."

c. *Time limitations*

"The Company encourages Employees to attempt to resolve matters informally with their supervisor.  If a matter cannot be resolved, an Employee's Covered Claim(s) should be filed with Human Resources under the prevailing Policy within 30 days after the dispute arises.  This 30-day guideline shall not be

applied by the Company to bar the submission of any Covered Claim to Human Resources Review (Level 1) within the applicable statute of limitations. [¶] After an Employee submits a Covered Claim at the initial filing at Level 1 for Human Resources Review, the Employee must (1) follow each step and cannot skip any level; and (2) file any request to proceed to any of the next levels within thirty (30) days after the date after Final Determination at the previous level. If an Employee does not file for the next step within the 30-day period, the Employee will waive his or her rights to pursue his or her covered claims."

d. *Arbitration procedures*

The policy contains a procedure for the joint selection of a neutral arbitrator from independent dispute resolution providers such as the American Arbitration Association. The arbitrator must have a minimum of three years' experience in the arbitration of employment law disputes or comparable experience. The parties have the right to present evidence, to request that the arbitrator subpoena witnesses or documents for the arbitration hearing, to present written briefs, and to hire a court reporter to report the hearing. The arbitrator must issue a written decision.

The arbitrator is required to apply the substantive law of the state in which the employee is, was, or sought to be predominantly employed. The arbitrator "may grant any remedy or relief that would have been available to an individual Employee had the claim been asserted in court for a Covered Claim." "Each party shall pay its own experts' and/or attorneys' fees unless the Arbitrator awards reasonable experts' and/or attorneys' fees to the Employee."

9

e.    *Discovery limitations*

The policy imposes strict limits on discovery in arbitration. Each party has the right to request the production of documents, but the parties must obtain leave from the arbitrator to conduct any other discovery. Depositions, interrogatories, and requests for admission are allowed only by agreement of the parties or by order of the arbitrator. The policy requires the parties to disclose documents they intend to use and witnesses they intend to call 20 days before the hearing, which is after the close of discovery.

f.    *Interim relief*

The policy contains an "Interim Relief" section stating: "For claims involving alleged breach of Employee's non-competition, non-solicitation, fiduciary, or confidentiality obligations, as well as claims involving trademarks, trade secrets, business know-how or intellectual property, either the Employee or the Company may . . . apply to any court of competent jurisdiction and seek interim provisional, injunctive, or other equitable relief until the arbitration award is rendered or the Covered Claim is otherwise resolved."

g.    *Confidentiality*

The policy contains a confidentiality provision stating: "All aspects of the proceedings pursuant to this [dispute resolution policy], including the hearing and recording of the proceeding, shall be confidential to the fullest extent permitted by law . . . except (i) to the extent both Parties agree otherwise, in writing; (ii) as may be appropriate in any subsequent proceeding between the parties[;] or (iii) as may otherwise be appropriate in response to a governmental agency or legal process."

10

h.  *Modification*

The policy allows the company to modify or terminate the policy upon 30 days' written notice.  The modification or termination is effective only as to claims submitted after the effective date of the modification or termination.

i.  *Severability*

The severability provision states:  "In the event that any portion of the [dispute resolution policy] is held to be in conflict with a mandatory provision of applicable law, the remainder of these . . . procedures shall not be affected to the extent permitted by law.  For example, if a court holds some particular provision(s) of the [dispute resolution policy] to be in conflict with a mandatory provision of applicable law in that jurisdiction, such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the [dispute resolution policy] and its arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected."

2.  *2019 Dispute Resolution Policy*

The 2019 version of the policy appears to be nearly identical to the 2003 version except claims for sexual harassment are excluded from covered claims.  The parties have not identified any differences in the 2019 policy that are material to this appeal.  Because the 2003 version was in effect at the time Rice signed the employment application and because there are no material differences between the policies, we rely on the 2003 version in this opinion.

11

C.    *The Parties' Arguments and the Trial Court's Ruling*

In the moving papers, Gulfstream argued Rice agreed to the dispute resolution policy, including its arbitration provision, when he signed the employment application and when he continued to be employed after being provided with a copy at the new employee orientation and after being notified of the update in 2019.  In opposition, Rice argued he had not agreed to arbitrate, but, even if he had, the dispute resolution policy was unconscionable.

A hearing was held on October 5, 2021.  The court expressed its preliminary views that Rice had agreed to be bound by the dispute resolution policy but that the agreement could not be enforced because it was procedurally and substantively unconscionable.[1]  The court took the matter under submission.

Later that day, the court issued a minute order denying the petition, stating, "[T]he agreement to arbitrate, the Dispute Resolution Policy (DRP), is unconscionable."  The court did not address whether a valid arbitration agreement was formed but instead proceeded directly to the unconscionability analysis.  The court found the agreement was procedurally unconscionable for three reasons:  (1) the "DRP is a contract of adhesion"; (2) the "employment application, which incorporated the DRP by reference and purported to bind plaintiff to the DRP, did not explicitly state that plaintiff was agreeing to binding arbitration,

---

[1]    Both parties characterize the court's statements at the hearing as "findings."  The court did not rule on the motion at the hearing and thus made no findings.  Instead, after expressing preliminary views, the court heard further argument from the parties and took the matter under submission.  The court issued a written order later that day.

12

and only explicitly stated that plaintiff waived his right to a jury trial"; and (3) "Plaintiff was never provided a copy of the DRP."

The trial court also found the following provisions of the policy were substantively unconscionable: (1) "[t]he PAGA waiver"; (2) "[t]he [d]iscovery restrictions"; (3) "[t]he one-sided employee compliance with the four-tiered DRP upon strict timelines, non-compliance of which resulted in waiver of plaintiff's claims"; (4) the "[e]mployer's unilateral ability to bypass the DRP upon 30 days' notice"; (5) "[t]he [c]onfidentiality provision"; and (6) "[t]he one-sided injunction provision only for actions likely to be brought by the employer."

Gulfstream timely appealed.

## DISCUSSION

A. *Standard of Review*

"There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration." (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 [quotation marks omitted] (*Lopez*).) "[I]f the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Ibid.* [quotation marks omitted]; accord, *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744 (*Garcia*) ["We review de novo the legal conclusions underlying a trial court's denial of a petition to compel arbitration."].)

"If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Lopez, supra,* 39 Cal.App.5th at p. 317.) "This traditional standard of review is highly deferential. It has three pillars. First, we accept all evidence supporting the trial court's order. Second, we

13

completely disregard contrary evidence.  Third, we draw all reasonable inferences to affirm the trial court.  These three pillars support the lintel:  We do not reweigh the evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.)

Contrary to Gulfstream's argument, the substantial evidence standard applies "with due deference to the trial court's resolution of factual conflicts[] regardless of whether the evidence is oral or documentary."  (*Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 868 fn. 1.)  The fact "that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 fn. 3; see also *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [appellate court must "defer to the factual determinations made by the trial court when the evidence is in conflict," even when the trial court's ruling is based on declarations].)

B.	*The Trial Court Correctly Decided the Dispute Resolution Policy Is Unconscionable*

"'The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.'" (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1128 (*Young*).)  Here, the trial court's written order did not address contract formation, and the court made no findings as to whether a valid agreement to arbitrate was formed.  We question whether Rice agreed to arbitrate because the employment application did not mention arbitration and because (as the trial court found based on substantial evidence) Rice was never provided with a copy of the dispute resolution policy containing the arbitration

clause.[2]  However, because we agree with the trial court that the dispute resolution policy is unconscionable and affirm on that basis, we do not need to reach the issue whether a valid contract was formed.  We therefore assume without deciding that Rice agreed to arbitrate by signing the employment application referencing the dispute resolution policy.

If a valid agreement to arbitrate is formed, courts will enforce the agreement as with any other contract.  (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1049 (*Mills)*; Code Civ. Proc., § 1281; 9 U.S.C. § 2.)  Generally applicable contract defenses such as unconscionability apply.  (*OTO,* at p. 125; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine "'has both a procedural and a substantive element.'"" (*OTO, supra,* 8 Cal.5th at p. 125; accord, *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).)  "'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh

---

[2]  We discuss the substantial evidence in support of the trial court's finding in section B.1, *infra.*  Because the finding is supported by substantial evidence, we accept it as true.

15

or one-sided."' (*OTO,* at p. 125; accord, *Pinnacle, supra,* 55 Cal.4th at p. 246.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on "'a sliding scale.'" [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO, supra*, 8 Cal.5th at pp. 125-126; accord, *Sanchez, supra*, 61 Cal.4th at p. 910.) "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*OTO,* at p. 126; accord, *Sanchez,* at p. 912.)

"The burden of proving unconscionability rests upon the party asserting it." (*OTO, supra,* 8 Cal.5th at p. 126; accord, *Sanchez, supra*, 61 Cal.4th at p. 911.) Whether an agreement is unconscionable is generally a question of law we review de novo. (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102.) However, "to the extent the trial court relied on contested facts in making its determination, we review the court's factual determinations for substantial evidence." (*Ibid.*)

1.  *The Circumstances Surrounding the Formation of the Contract Involved a Heightened Degree of Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.]

16

An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, supra,* 8 Cal.5th at p. 126.) Here, the agreement was presented on a take-it-or-leave-it basis and was imposed as a condition of employment and was therefore adhesive.

Adhesion contracts in the employment context "typically contain some aspects of procedural unconscionability." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704.) "[T]he economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*); accord, *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) Thus, adhesive employment contracts generally have at least a minimal degree of procedural unconscionability. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 68 [analyzing an adhesive contract in a non-employment context].)

To determine whether a heightened degree of procedural unconscionability existed, we consider "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO, supra,* 8 Cal.5th at p. 126.) "Oppression occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form." (*Ibid.* [quotation marks omitted].)

17

Here, the circumstances surrounding the contract's formation involved a significant degree of surprise and oppression. Rice purportedly agreed to arbitrate by signing the application containing the following language: "I agree to the exclusive resolution of all claims arising out of or relating to . . . employment . . . by the procedures set forth in the Company's Dispute Resolution Policy. . . . I understand that as a result of my and the Company's mutual agreement to resolve claims exclusively through the Company's Dispute Resolution Policy, I and the Company hereby waive any rights to a jury trial."

The trial court found Rice "was never provided a copy of the [dispute resolution policy]." There was substantial evidence to support that finding. Gulfstream acknowledges Rice was not provided with a copy at the time he signed the application, and Rice declared he had never received a copy either before or after signing. Rice's declaration constitutes substantial evidence to support the court's finding that he never received the policy. Gulfstream devotes many pages of its briefs discussing the evidence in support of its position that Rice was provided with a copy of the policy while he was previously employed with the company and at the orientation after he was rehired, but that evidence is irrelevant because there is substantial evidence to support the trial court's finding that he never received it.

Further, the application did not explicitly state that Rice agreed to binding arbitration or that he waived the right to have any disputes determined in a court of law. It referred only to an undefined "dispute resolution policy." Although the application states the applicant waived the right to a jury, the applicant was not informed he or she waived all rights to a judicial forum. Gulfstream presents no evidence that this was explained to Rice

at the time he signed the application.  In his declaration, Rice stated the policy was never explained to him, either before or after he signed the application.

These facts demonstrate Rice's agreement to arbitrate involved a high degree of surprise.  Even the fact the dispute resolution policy required arbitration was "artfully hidden."  (See *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246 [discussing cases standing "for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement"].)  Further, the specific terms Rice contends are substantially unconscionable were hidden from him when he signed.  (*Ibid.*; see also *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 476-477 [element of surprise is shown when allegedly unconscionable terms are included in AAA arbitration rules that are incorporated by reference into an employee's arbitration agreement but are not provided to the employee].)

These facts also support the conclusion that Rice was subjected to a higher degree of oppression than an employee is normally subjected to when agreeing to arbitration.  In considering the degree of oppression, courts consider, among other things, whether the employee had a sufficient opportunity to review the arbitration agreement, whether the employer explained the terms of the agreement to the employee, and whether the circumstances as a whole indicate the employee understood the terms of the agreement before signing.  (See, e.g., *OTO, supra,* 8 Cal.5th at pp. 126-129.)  Here, Rice's agreement to comply with the dispute resolution policy involved a higher-than-

19

average degree of oppression because Gulfstream did not provide Rice with a copy of the dispute resolution policy, did not use the word "arbitration" in the employment application, and did not explain to Rice that he was agreeing to arbitrate by signing the application. (See *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 634 [high degree of procedural unconscionability was present when employee was required to sign an agreement to be bound by a dispute resolution policy but employer would not provide a copy of the policy for her review].)

Gulfstream argues at most only minimal procedural unconscionability was shown. Gulfstream asserts it does not matter that the application Rice signed did not mention arbitration, that the dispute resolution policy was incorporated by reference, and that Rice was not provided with a copy of the policy. Gulfstream cites cases for the proposition that a contract can be formed when an arbitration provision is incorporated by reference or when the document containing the arbitration clause is not provided to the employee, but those cases are not relevant to procedural unconscionability. Even if a contract may be formed under those circumstances, those factors add to the procedural unconscionability in the agreement's formation. (See *OTO, supra,* 8 Cal.5th at pp. 126-127.) The cases Gulfstream cites do not suggest otherwise.[3]

---

[3]     In Gulfstream's discussion of procedural unconscionability on pages 29 to 44 of its opening brief, Gulfstream cited only a single case concerning procedural unconscionability; the rest concerned contract formation. The procedural unconscionability case Gulfstream cites, *Sanchez v. Valencia Holding Co., LLC, supra,* 61 Cal.4th 899 does not support its position. There, the court found there was some degree of procedural unconscionability in an adhesive vehicle sales agreement but the

20

2.      *The Arbitration Agreement Is Substantively*
        *Unconscionable*

Because we conclude the agreement to arbitrate involved a heightened degree of procedural unconscionability, we "closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.'" (*OTO, supra,* 8 Cal.5th at p. 130; accord, *Baltazar, supra*, 62 Cal.4th at p. 1244.)

a.      *The limitations on discovery are unconscionable*

A provision limiting discovery in an arbitration agreement in the employment context is substantively unconscionable if the discovery is not sufficient to allow employees to vindicate their statutory rights. As we explained in *Mills, supra,* 84 Cal.App.5th at page 1058: "Although parties may 'agree to something *less than* the full panoply of discovery,' employees 'are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s). . . . ' [Citations.] As the Supreme Court in *Armendariz* explained with respect to FEHA claims, 'We agree that adequate discovery is indispensable for the vindication of FEHA claims.' [Citation.] 'In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and

unconscionability was not heightened by the consumer's failure to read the agreement and the vendor's failure to highlight the arbitration clause. (*Id*. at pp. 914-915.) *Sanchez* is entirely consistent with the conclusion Gulfstream subjected Rice to a heightened degree of procedural unconscionability here.

whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims.' [Citations.] 'The denial of adequate discovery in arbitration proceedings leads to the de facto frustration of the employee's statutory rights.'" (*Armendariz, supra,* 24 Cal.4th 83 at pp. 1058-1059.)

The only discovery requests that are allowed as a matter of right under the dispute resolution policy are requests for production. Depositions are allowed only by agreement of the parties or by order of the arbitrator. The parties are similarly not allowed to propound interrogatories or requests for admission except by order of the arbitrator. While the policy does require the parties to disclose the witnesses and documents they intend to rely on at the hearing, the disclosure does not have to be made until after the close of discovery.

In *Mills*, we concluded that similar limitations on discovery were substantively unconscionable because the discovery was not sufficient to allow the plaintiff to arbitrate his statutory claims. (*Mills, supra,* 84 Cal.App.5th at pp. 1059-1060.) There, the arbitration agreement allowed each party to take depositions, designate expert witnesses, and subpoena witnesses, but did not expressly allow for document requests, requests for admission, or interrogatories. Instead, such discovery could be had "'only where the hearing arbitrator so orders, upon a showing of substantial need.'" (*Id*. at p. 1059.) We concluded that the provision allowing the arbitrator to order additional discovery upon a showing of substantial need was an "'inadequate safety valve'" to ensure sufficient discovery would be allowed to vindicate the plaintiff's statutory rights. (*Id*. at p. 1060

[explaining and following *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 718-719].)

Here, the provision prohibiting depositions except upon agreement of the parties or order of the arbitrator is especially onerous. Although the provision is facially neutral, it unfairly favors Gulfstream. (See *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 487 (*De Leon*).) "'Employment disputes are factually complex, and their outcomes 'are often determined by the testimony of multiple percipient witnesses . . . .' [Citation.] Seemingly neutral limitations on discovery in employment disputes may be nonmutual in effect.'" (*Id.* at pp. 487-488.) Gulfstream is likely to employ and have access to many of the relevant witnesses and thus would not need to take their depositions. The inability of Rice to depose such witnesses would "unfairly prevent [Rice] from vindicating statutory claims." (See *Nunez v. Cycad Management LLC* (2022) 77 Cal.App.5th 276, 285 (*Nunez*); see also *Kinney v. United Healthcare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1332 [because an employer "is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim"].)

Courts have concluded provisions limiting depositions were substantively unconscionable when they allowed for more depositions than are allowed here. (*Nunez, supra,* 77 Cal.App.5th at p. 285 [arbitration provision in employment contract limiting discovery to three depositions and 30 discovery responses is substantively unconscionable]; *De Leon, supra,* 72 Cal.App.5th at pp. 487-488 [provision limiting parties to 20 interrogatories and

23

three depositions was substantively unconscionable]; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 911 [provision allowing parties to take two depositions but allowing for no written discovery was substantively unconscionable].) We agree with the trial court that the limitations on discovery are substantively unconscionable.

Gulfstream attempts to distinguish cases finding discovery limitations unconscionable by arguing that, in the agreements in those cases, the arbitrator could order additional discovery only on a showing of "compelling need." Gulfstream misreads the applicable cases. In *Mills*, for example, the discovery provision we found unconscionable allowed the arbitrator to order additional discovery on a showing of "'substantial need.'" (*Mills, supra,* 84 Cal.App.5th at p. 1059; see also *Davis v. Kozak, supra,* 53 Cal.App.5th at p. 912 [finding discovery limitation unconscionable even though arbitrator could order additional discovery on a finding of "'sufficient cause'"].)

Here, as Gulfstream notes, the dispute resolution policy does not articulate the standard the arbitrator is to apply in deciding whether to allow additional discovery. But that does not lessen the substantive unconscionability. An arbitrator could conclude he or she has unfettered discretion to deny a request or could require a party to show "substantial need" or "sufficient cause" for the discovery. There is no reason to believe an arbitrator would apply a less onerous standard.

Contrary to Gulfstream's argument, the conclusion that the discovery limitations are substantively unconscionable is not inconsistent with the United States Supreme Court's holdings in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 32 (*Gilmer*) and *AT&T Mobility LLC v. Concepcion* (2011) 563

24

U.S. 333 (*Concepcion*). In *Gilmer*, the issue was whether a claim for age discrimination under federal law could be subject to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. The appellant raised a "host of challenges to the adequacy of arbitration procedures," including that discovery in arbitration would be more limited than in federal court. The court stated that even though discovery in arbitration might not be as extensive as in the federal courts, "there has been no showing in this case that the NYSE discovery provisions, which allow for document production, information requests, depositions, and subpoenas . . . will prove insufficient to allow ADEA claimants such as Gilmer a fair opportunity to present their claims." (*Gilmer,* at pp. 30-31.) Here, by contrast, the discovery provision does not allow for any depositions or interrogatories as a matter of right.

In *Concepcion,* the court held that although section 2 of the Federal Arbitration Act "preserves generally applicable contract defenses, nothing in [section 2] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." (*Concepcion, supra,* 563 U.S. at p. 343.) The court stated, "An obvious illustration of this point would be a case finding unconscionable . . . arbitration agreements that fail to provide for *judicially monitored* discovery." (*Id.* at pp. 341-342 [italics added].) That illustration does not apply here. *Concepcion* did not hold a court could never find an agreement was unconscionable because of limitations on discovery.

Gulfstream cites *Caley v. Gulfstream Aerospace Corp.* (11th Cir. 2005) 428 F.3d 1359, in which the Eleventh Circuit concluded Gulfstream's dispute resolution policy was not unconscionable under Georgia law. We decline to follow *Caley*

because, among other reasons, the standard for unconscionability under Georgia law is different from the standard here. (*Caley,* at p. 1378 [agreement is unconscionable under Georgia law only if the agreement is one that "'no sane man not acting under a delusion would make and that no honest man would take advantage of'"].)

>    *b.    The deadlines an employee must comply with in the four-level review process are unconscionable*

Arbitration provisions that shorten the applicable statutes of limitations for statutory employment claims are substantively unconscionable. (See, e.g., *De Leon, supra,* 72 Cal.App.5th at p. 487; *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 478; *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 254; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117.) Here, the policy requires an employee who submits a dispute for informal resolution to Human Resources to initiate the next level in the process within 30 days after the termination of that and each subsequent step, or the employee will waive the claim. These strict deadlines will likely have the effect of shortening the statute of limitations in many cases and thus are unconscionable.

Under the policy, "[t]he Company encourages Employees to attempt to resolve matters informally with their supervisor." If the employee is unable to resolve the matter informally, the employee may bring the matter to Human Resources for a "Level 1" review. In Level 1, "Human Resources will informally meet with the Employee, his or her supervisor, and other parties involved in the dispute to ascertain the circumstances and to try

26

to resolve the matter informally and by agreement of the persons involved."

The policy provides the matter *"should"* be submitted to Human Resources "within 30 days after the dispute arises," but this initial deadline is not mandatory.  The policy states:  "This 30-day guideline shall not be applied by the Company to bar the submission of any Covered Claim to Human Resources Review (Level 1) within the applicable statute of limitations."

Once the matter is submitted to Human Resources, however, the employee must comply with a series of strict 30-day deadlines to initiate the next level, or the employee waives the claims.  As the policy explains:  "After an Employee submits a Covered Claim at the initial filing at Level 1 for Human Resources Review, the Employee must (1) follow each step and cannot skip any level; and (2) file any request to proceed to any of the next levels within thirty (30) days after the date after Final Determination at the previous level.  If an Employee does not file for the next step within the 30-day period, the Employee will waive his or her rights to pursue his or her covered claims."  These deadlines are reiterated several times throughout the policy.

Here, among other claims, Rice asserts claims for violations of FEHA and the Labor Code, which have a three-year statute of limitations, and violations of the Unfair Competition Law, which has a four-year statute of limitations.  Under the policy, if Rice had been unable to resolve these disputes with his supervisor and escalated the matters to Human Resources within the period suggested by the policy, Rice would then have been bound by the interim 30-day deadlines, which likely would have the effect of dramatically reducing the statute of limitations period.  This

27

reduction in the statute of limitations period is substantively unconscionable.

*Carlson v. Home Team Pest Defense, Inc.*, *supra*, 239 Cal.App.4th at page 636 is on point. The dispute resolution policy in that case, as here, required employees to submit disputes to the company for an attempt at informal resolution before an arbitration could be initiated. If informal resolution was not successful, the employee had to file a demand for arbitration within 90 days after filing the initial request for dispute resolution. "The practical effect of this last provision is that, while [the employee] may present her claims to [the employer] well within the otherwise applicable legal statutes of limitations, the addition of a 90-day time limitation to demand arbitration acts to limit the time that would be available otherwise for filing a complaint in superior court." (*Ibid.*) The court concluded the provision was substantively unconscionable. The same reasoning applies here.

Indeed, an employee subjected to this policy could be forced to initiate arbitration before the claim had even accrued. The facts of *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479 (*Romano*) are illustrative. There, the employer informed the employee he would be terminated in two years, when he reached a certain level of seniority. (*Id.* at p. 484.) The employee contended the decision was the result of age discrimination and retaliation under FEHA. After the employee was actually discharged, the employee filed suit, and the employer claimed the suit was barred by the statute of limitations. The issue was whether the cause of action accrued for statute of limitations purposes on the date he was notified he would be discharged or the actual date of discharge.

28

The court held the statute of limitations ran from date of discharge, not from the date the employee had been informed discharge was inevitable. The court concluded that "a holding that the statute of limitations on a claim under FEHA runs from the time of notification of termination would promote premature and potentially destructive claims" and "would reduce sharply any chance of conciliation between employer and employee." (*Romano, supra,* 14 Cal.4th at p. 494.)

Under the dispute resolution policy here, an employee in the position of the *Romano* plaintiff who was informed of a discharge decision and who sought to pursue an informal resolution by submitting the dispute to Human Resources would then be required to comply with strict 30-day deadlines to continue through the process, culminating in the initiation of arbitration. The employee could be required to initiate arbitration before the cause of action had even accrued.

The substantive unconscionability of the deadlines in the tiered resolution process is heightened because they apply only to employees and not to the company. While employees "must complete each level of the process before proceeding to the next level[,] [t]he Company may elect to bypass one or more steps prior to arbitration for disputes with applicants for employment, with former employees, or if the Company is the initiating party." "Mutuality is the "'paramount consideration'" in assessing substantive conscionability." (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1056.) Where, as here, a provision unilaterally favors the employer and the employer has presented no evidence showing a legitimate reason for the disparate treatment, the provision must be closely scrutinized to determine if it is unconscionable. (*Id.* at p. 1057.)

29

c.     *The confidentiality provision is unconscionable*

The dispute resolution policy contains a confidentiality clause providing: "All aspects of the proceedings pursuant to this [dispute resolution policy], including the hearing and recording of the proceeding, shall be confidential to the fullest extent permitted by law." The trial court found the confidentiality provision unconscionable. We agree.

In *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066-1077 (*Ramos*), the court found a confidentiality provision in an arbitration agreement substantively unconscionable because it impaired the employee's ability to gather evidence in support of her claim. The provision required the employee to keep "all aspects" of the arbitration proceedings confidential. The court found the provision effectively prohibited an employee from contacting witnesses or conducting informal discovery, including by interviewing other employees. Such limitation "would not only increase [the employee's] costs unnecessarily by requiring her to conduct depositions rather than informal interviews, it also defeats the purpose of using arbitration as a simpler, more time-effective forum for resolving disputes. In addition, requiring discrimination cases be kept secret unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights and may discourage potential plaintiffs from filing discrimination cases." (*Id.* at p. 1066.) For those reasons, the court found the provision to be unconscionable. (*Ibid.*; see also *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 725-726 [provision in employment arbitration agreement prohibiting employees and their attorneys from communicating with other employees about the aggrieved employee's claim was substantively unconscionable because

30

"without the ability to conduct such an informal investigation, an employee will be hampered in his or her ability to effectively tailor the limited discovery allowed under the arbitration agreement"].)

The provision here is more expansive than the one at issue in *Ramos, supra,* 28 Cal.App.5th 1042 since it covers all aspects of the dispute resolution process, including Level 1, in which Human Resources meets informally with the employee, his or her supervisor, and other parties involved in the dispute. Requiring an employee to keep all attempts at dispute resolution confidential—including informal discussions with Human Resources—would substantially impair an employee's ability to investigate and develop evidence in support of his or her claim. The restriction would preclude an employee, for example, from talking to his or her colleagues about assertions made by the employee's supervisor in the Level 1 meetings to determine the veracity of the statements. It would hamper an employee's ability to determine whether his or her colleagues support the employee's version of events or to gather evidence showing a pattern of discrimination. The secrecy would also make it less likely potential witnesses would learn about a plaintiff's dispute and come forward with relevant evidence.

The confidentiality provision would be especially harmful here, where the agreement does not allow for any depositions or interrogatories in the arbitration proceeding without an order from the arbitrator. Taken together, the restrictions could substantially impair the employee's ability to conduct both formal and informal discovery. For the reasons stated in *Ramos*, we uphold the trial court's finding that the confidentiality provision is unconscionable.

31

Gulfstream argues the confidentiality provision is not unconscionable because it requires confidentiality only to the extent "permitted by law." The inclusion of such language does not significantly reduce the unconscionability of the provision because a layperson without legal training would not know the provision could not be enforced. (See *OTO, supra,* 8 Cal.5th at pp. 128-129 [discussing such language in the context of procedural unconscionability].)

Gulfstream also argues the confidentiality provision is akin to the ones upheld in *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398 (*Carmax*) and *Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723 (*Woodside*). Gulfstream's position lacks merit. The confidentiality provision in *Woodside* required the parties to keep the *transcript* of the judicial reference hearing confidential. (*Woodside,* at pp. 731-732.) This is substantially narrower than a provision requiring a claimant to keep "all aspects" of dispute resolution attempts confidential, from Level 1 informal discussions with the human resources department forward.

Further, as *Ramos* stated, *Carmax* did not address the argument "that a confidentiality clause like the one at issue in this case would impair [an employee's] ability to engage in informal discovery in pursuit of her litigation claims" and is thus not authority on that point. (*Ramos, supra,* 28 Cal.App.5th at p. 1066 [distinguishing *Carmax, supra,* 224 Cal.App.4th 398].)

In its reply brief, Gulfstream suggests the confidentiality provision applies only to the arbitration hearing and the recording of the proceeding. That argument is inconsistent with the express language of the provision and the structure of dispute

resolution policy.  The provision again states:  "All aspects of the proceedings pursuant to the [dispute resolution policy], including the hearing and recording of the proceeding, shall be confidential to the fullest extent permitted by law."  Levels 1 through 3 are "proceedings pursuant to the [dispute resolution policy]."  Further, if Gulfstream intended for this provision to apply only to the arbitration proceeding in Level 4, Gulfstream could have included it in the terms that apply solely to Level 4.  Instead, it is included among the general provisions that apply to all levels.

        d.     *The PAGA waiver is unconscionable*

The policy provides:  "[N]o Covered Claim may be brought as a class or collective action either under this Policy or in court."  Further, the employee represents "that he/she will not act as a class or collective action representative . . . with respect to any Covered Claim."  The parties agree this provision, if enforced, would preclude Rice from bringing a PAGA claim in a representative capacity on behalf of other aggrieved employees.

This provision is substantively unconscionable.  PAGA waivers are "contrary to public policy and unenforceable as a matter of state law."  (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.)  Gulfstream inexplicably argues that *Viking River Cruises v. Moriana* (2022) __ U.S. __, 142 S.Ct. 1906 overruled *Iskanian* on this point.  Gulfstream is wrong.  The Supreme Court expressly held the FAA does not preempt *Iskanian*'s holding that PAGA waivers are unenforceable.  (*Viking River Cruises,* at pp. 1924-1925 ["Under *Iskanian*, [the PAGA waiver] was invalid if construed as a wholesale waiver of PAGA claims.  And under our holding, that aspect of *Iskanian* is not preempted by the FAA."]; see also *id.* at

33

p. 1921 ["Nothing in the FAA establishes a categorical rule mandating enforcement of waivers of standing to assert claims on behalf of absent principals"]; *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 649-650 [analyzing *Viking River Cruises* and concluding "the rule precluding the waiver of the right to bring a representative action under PAGA is an aspect of *Iskanian* that is not preempted by federal law and remains good law"].)

An illegal waiver of statutory rights is substantively unconscionable. (See, e.g., *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 448-449 [punitive damages waiver is substantively unconscionable].) While a PAGA waiver alone is not enough to render the entire arbitration agreement unconscionable because it could easily be severed, the fact an agreement contains multiple unconscionable terms is relevant to whether the arbitration agreement is permeated with an unlawful purpose. (See *Armendariz, supra,* 24 Cal.4th at p. 124.)[4]

#### e.     *Other provisions*

The trial court concluded two other provisions were substantively unconscionable: the "one-sided injunction provision only for actions likely to be brought by the employer" and the "[e]mployer's unilateral ability to bypass the DPR upon 30 days'

---

[4]     The fact the agreement contained this unconscionable term is relevant regardless of whether Rice asserts a representative PAGA claim or only one in his individual capacity. Whether an arbitration agreement is unconscionable is measured at the time the contract is made. (See, e.g., *Armendariz, supra,* 24 Cal.4th at p. 122.)

notice." Because we conclude the provisions already discussed demonstrate the agreement is permeated with unconscionability, we do not reach the issue whether the interim relief and modification provisions were also unconscionable.

C.    *The Trial Court Did Not Abuse Its Discretion in Declining to Sever the Unconscionable Arbitration Provisions*

Civil Code section 1670.5, subdivision (a), provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

"The Supreme Court has interpreted this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then 'must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.'" (*Lange v. Monster Energy Co., supra,* 46 Cal.App.5th at pp. 452-453). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.'" (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1477-1478, quoting *Armendariz, supra,* 24 Cal.4th at p. 122.) We review the trial court's decision

35

not to sever unconscionable terms for an abuse of discretion. (*Mills, supra*, 84 Cal.App.5th at p. 1065.)

Here, the unconscionability permeates the agreement. The court could not simply sever the offending terms but would have to rewrite the agreement, which the court may not do. (See, e.g., *Mills, supra,* 84 Cal.App.5th at p. 1066 ["Where 'a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement"].) At the very least, the discovery provisions and the provisions requiring the employee but not the employer to go through all levels of the dispute resolution process would have to be rewritten. (*Id.* at pp. 1066-1067; see also *De Leon, supra,* 72 Cal.App.5th at p. 493 [declining to sever unlawful statute of limitations and discovery provisions of the arbitration agreement, explaining if ""the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," the court must void the entire agreement"].)

Further, the fact there are multiple unconscionable provisions supports the conclusion that unconscionability permeates the agreement. "[M]ultiple defects indicate a systemic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124; see also *Mills, supra,* 84 Cal.App.5th at p. 1066.)

Accordingly, we conclude the court did not abuse its discretion by denying the motion instead of severing the unconscionable provisions.

Gulfstream asserts the trial court did not consider severance because it did not address it in its written order.

Gulfstream's inference is not supported by the record. The parties thoroughly briefed whether any unconscionable provision could be severed, and the issue was touched on at the hearing.

Moreover, Gulfstream has forfeited any objection on this basis. Gulfstream had the right to request a statement of decision under Code of Civil Procedure section 1291, which states, "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment . . . is made that is appealable under this title [i.e., the California Arbitration Act]." Gulfstream did not request a statement of decision, and thus the trial court was not required to provide one. (See *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 (*Acquire II, Ltd.*).)

"A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence." (*Acquire II, Ltd., supra,* 213 Cal.App.4th at p. 970 [applying these principles in an appeal from an order denying a motion to compel arbitration].)

Accordingly, we presume the trial court found the agreement was permeated with substantive unconscionability. Further, because the court could not sever the discovery provision without rewriting the contract, the only way the trial court could validly exercise its discretion was to decline to enforce the agreement. Thus, regardless whether the court actually exercised its discretion, we affirm.

D.    *Rice's Request for Sanctions Is Denied*

Rice asserts the appeal was frivolous and requests attorney fees under Code of Civil Procedure section 907.  We deny the request.  An appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Gulfstream's appeal does not meet that standard.  Gulfstream cites several trial court decisions enforcing the dispute resolution policy under California law and an Eleventh Circuit case (*Caley, supra,* 428 F.3d 1359) enforcing it under Georgia law.  That is enough to show the appeal is not frivolous.

**DISPOSITION**

The order is affirmed.  Rice is to recover his costs on appeal.

ESCALANTE, J.*

We concur:

PERLUSS, P. J.                    FEUER, J.

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.